IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEBRASKA

RAYSEAN BARBER,

        Plaintiff,

vs.

SCOTT FRAKES, TAGGART BOYD, EDWARD HILL, MIKI HOLLISTER, KRISTINA MILBURN, NATE SHWAB, DR. MARK LUKIN, DR. MEGAN FORD, BETTY GERGEN, JACQUE GOODING, AMY REZNEY, and ROBIN CHURCH,

        Defendants.

**8:21CV157**

**MEMORANDUM AND ORDER**

Plaintiff is currently incarcerated at the Omaha Correctional Center ("OCC"). The court has granted Plaintiff permission to proceed in forma pauperis (Filing 8), and the court now conducts an initial review of the Complaint (Filing 1) to determine whether summary dismissal is appropriate under 28 U.S.C. §§ 1915(e) and 1915A.

## I. SUMMARY OF COMPLAINT

This is Plaintiff's second attempt[1] to bring a 42 U.S.C. §§ 1983 and 1985 action against Scott Frakes, Director of the Nebraska Department of Correctional Services ("NDCS"); Taggart Boyd, the Warden of the Lincoln Correctional Center ("LCC"); and 10 LCC employees making up the Mental Health Unit ("MHU") Multi-Disciplinary Team or Mental Health Treatment Team ("MHTT") for alleged violations of his constitutional rights under the Fourteenth Amendment. Plaintiff

---

[1] *See Barber v. Frakes*, No. 8:18CV410 (D. Neb.).

sues Frakes in his official capacity for declaratory and injunctive relief, and in his individual capacity for monetary damages. (*Id.* at CM/ECF p. 3, ¶ 9.) Plaintiff sues the remaining 11 Defendants in their individual capacities. (*Id.* at CM/ECF pp. 3-5, ¶¶ 10-20.)

Plaintiff alleges that he has been diagnosed with a serious mental illness and was housed in the MHU or D-Unit at the LCC. (*Id.* at CM/ECF p. 1, ¶ 1.) Plaintiff alleges that the MHU Levels Program deprives inmates in the MHU of activities and privileges for disciplinary reasons without affording an inmate a hearing or any of the procedures required by Title 68 of the Nebraska Administrative Code, which sets forth the rules for regulating an inmate's behavior. (*Id.* at CM/ECF pp. 1-2, 5, ¶¶ 2-5, 22-30.) Plaintiff further alleges that in the MHU Levels Program, deprivations of privileges are imposed for punishment purposes and not for treatment purposes. (*Id.* at CM/ECF pp. 6-7, ¶¶ 25-26.) MHU inmates sign a contract informing them that they "can be placed on the therapeutic restriction essentially at any time." (*Id.* at CM/ECF p. 9, ¶ 34.) Plaintiff asserts that although "Level D is also called a therapeutic restriction," "that name is just a front to cover up the real use of Level D, which is to punish the mentally ill inmate for allegedly committing misconduct without following the rules." (*Id.* at CM/ECF p. 7, ¶ 26.) According to Plaintiff, the Levels Program "is a way for D-Unit staff to presume guilt of the mentally ill inmates in the program and to override the disciplinary procedures despite its mandatory character." (*Id.* at CM/ECF p. 7, ¶ 29.)

Plaintiff alleges that on June 1, 2018, the MHTT placed him on "Level D" for 17 days without being afforded a hearing based on reports that he had engaged in passing and receiving canteen items with another inmate, which is a restriction that is similar to "room restriction" set forth in Title 68. (*Id.* at CM/ECF pp. 5-7, 8, ¶¶ 23, 25, 31.) As a result of being placed on level D, Plaintiff lost his job as the lead porter on the MHU. (Filing 1 at CM/ECF p. 8, ¶ 33.) The other inmate with whom Plaintiff allegedly exchanged canteen items was not punished for his alleged misconduct. (*Id.* at CM/ECF p. 8, ¶ 31.)

Plaintiff alleges that the MHU Multi-Disciplinary Team's enforcement of the Levels Program violated the Fourteenth Amendment, and that "[a]ll Defendants conspired to deprive [Plaintiff] and all inmates similarly situated by being part of the mental health program of equal protections of the law by enforcing the levels program, which is used as a means of punishing said inmates without affording them rights mandatorily afforded to all inmates within NDCS as promulgated in Title 68." (*Id.* at CM/ECF pp. 2-3, 12-13, ¶¶ 5, 7, 42-43.) Plaintiff further alleges that Frakes and Boyd "conspired through complicity." (*Id.* at CM/ECF p. 13, ¶ 42.) For relief, Plaintiff seeks a declaration that the Levels Program violates MHU "inmate's equal protections of the law," injunctive relief enjoining the continuation of the MHU Levels Program, and monetary damages. (*Id.* at CM/ECF p. 13, ¶¶ 44-46.)

## II. LEGAL STANDARDS ON INITIAL REVIEW

The court is required to review prisoner and in forma pauperis complaints seeking relief against a governmental entity or an officer or employee of a governmental entity to determine whether summary dismissal is appropriate. *See* 28 U.S.C. §§ 1915(e) and 1915A. The court must dismiss a complaint or any portion of it that states a frivolous or malicious claim, that fails to state a claim upon which relief may be granted, or that seeks monetary relief from a defendant who is immune from such relief. 28 U.S.C. § 1915(e)(2)(B); 28 U.S.C. § 1915A(b).

Pro se plaintiffs must set forth enough factual allegations to "nudge[] their claims across the line from conceivable to plausible," or "their complaint must be dismissed." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 569-70 (2007); *see also Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) ("A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged.").

"The essential function of a complaint under the Federal Rules of Civil Procedure is to give the opposing party 'fair notice of the nature and basis or grounds for a claim, and a general indication of the type of litigation involved.'" *Topchian v.*

3

*JPMorgan Chase Bank, N.A.*, 760 F.3d 843, 848 (8th Cir. 2014) (quoting *Hopkins v. Saunders*, 199 F.3d 968, 973 (8th Cir. 1999)). However, "[a] pro se complaint must be liberally construed, and pro se litigants are held to a lesser pleading standard than other parties." *Id.* at 849 (internal quotation marks and citations omitted).

### III. DISCUSSION

**A. Claims for Declaratory and Injunctive Relief**

As stated above, Plaintiff's Complaint seeks injunctive and declaratory relief with respect to the MHU Levels Program. However, the fact that Plaintiff is no longer incarcerated at the LCC or subject to the MHU Levels Program moots his claims for declaratory and injunctive relief.

Article III of the Constitution limits federal court jurisdiction to "cases" and "controversies." A case becomes "moot," thus ending jurisdiction, "when the issues presented are no longer 'live' or the parties lack a legally cognizable interest." *United States Parole Comm'n v. Geraghty*, 445 U.S. 388, 396 (1980) (quoting *Powell v. McCormack*, 395 U.S. 486, 496 (1969)) (internal quotation marks omitted). Injunctive relief "'is unavailable absent a showing of irreparable injury, a requirement that cannot be met where there is no showing of any real or immediate threat that the plaintiff will be wronged again.'" *Martin v. Sargent*, 780 F.2d 1334, 1337 (8th Cir. 1985) (quoting *City of Los Angeles v. Lyons*, 461 U.S. 95, 111, (1983)). Likewise, to warrant declaratory relief, "the injury still must be clearly impending." *Vorbeck v. Schnicker*, 660 F.2d 1260, 1265 (8th Cir. 1981).

Here, Plaintiff is confined at the OCC and is no longer subject to the LCC MHU Levels Program. Thus, his claim for injunctive relief is moot, and he lacks standing to seek a declaration as to the constitutionality of the Levels Program. *Martin*, 780 F.2d at 1337 (concluding that claim for injunctive relief against warden was moot and prisoner lacked standing to seek declaratory relief because prisoner was transferred to another prison).

4

### B. Due Process

Liberally construed, Plaintiff asserts that his due process rights were violated when Defendants deprived him of privileges for punitive purposes without adhering to the disciplinary procedures set forth in Title 68 of the Nebraska Administrative Code. More specifically, Plaintiff appears to allege that his due process rights were violated when he was placed on a 17-day room restriction without affording him any of the procedures required by Title 68 of the Nebraska Administrative Code and lost his lead porter job as a result.

The Supreme Court has held that "[a]s long as the conditions or degree of confinement to which the prisoner is subjected is within the sentence imposed upon him and is not otherwise violative of the Constitution, the Due Process Clause does not in itself subject an inmate's treatment by prison authorities to judicial oversight." *Montanye v. Haymes*, 427 U.S. 236, 242 (1976). In order to prevail on a Fourteenth Amendment due process claim, a plaintiff must allege that he was deprived of life, liberty or property by government action. *Phillips v. Norris*, 320 F.3d 844, 846 (8th Cir. 2003). With respect to actions filed by prison inmates, the court must determine whether the deprivation "impose[d] atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life." *Sandin v. Conner*, 515 U.S. 472, 484 (1995); *see also Callender v. Sioux City Residential Treatment Facility*, 88 F.3d 666, 669 (8th Cir. 1996) (noting that following *Sandin*, courts focus on the deprivation itself and not on whether mandatory language exists in statutes or prison regulations). "Discipline by prison officials in response to a wide range of misconduct falls within the expected perimeters of the sentence imposed by a court of law." *Sandin*, 515 U.S. at 485.

Here, Plaintiff's 17-day room restriction plainly does not rise to the level of atypical and significant. *See Orr v. Larkins*, 610 F.3d 1032, 1034 (8th Cir. 2010) (per curiam) (inmate was not deprived of liberty interest during nine months in administrative segregation). The Eighth Circuit has consistently held that

"administrative and disciplinary segregation are not atypical and significant hardships[.]" *Portley-El v. Brill*, 288 F.3d 1063, 1065 (8th Cir. 2002); *Phillips*, 320 F.3d at 847 ("We have consistently held that a demotion to segregation, even without cause, is not itself an atypical and significant hardship."); *see also Freitas v. Ault*, 109 F.3d 1335, 1337-38 (8th Cir. 1997) (finding that a prisoner had no constitutionally protected liberty interest in remaining in less restrictive prison environment); *Kennedy v. Blankenship*, 100 F.3d 640, 642-43 n.2 (8th Cir. 1996) (stating that punitive isolation is not an atypical and significant deprivation). Thus, to the extent Plaintiff is claiming the 17-day room restriction violated his due process rights, this claim must be dismissed.

Similarly, to the extent Plaintiff complains that the loss of his lead porter job violated his due process rights, his claim fails. The Eighth Circuit has long held that the loss of a prison job, the compensation derived from that job, or the expectation of keeping a particular prison job does not implicate any property or liberty interest entitled to due process protection. *See Flittie v. Solem*, 827 F.2d 276, 279 (8th Cir. 1987) ("[I]nmates have no constitutional right to be assigned to a particular job."); *Lyon v. Farrier*, 727 F.2d 766, 769 (8th Cir. 1984) (concluding an inmate has no constitutional right to a prison job nor to retain a particular job); *Peck v. Hoff*, 660 F.2d 371, 373 (8th Cir. 1981) (determining inmate had no legal entitlement or right to particular job assignment). *See also Newsom v. Norris*, 888 F.2d 371, 374 (6th Cir. 1989); *Garza v. Miller*, 688 F.2d 480, 485 (7th Cir. 1982). Moreover, the loss of a prison job is not an atypical or significant hardship in relation to the ordinary incidents of prison life. *See Callender*, 88 F.3d at 670 (reversing a judgment in favor of an inmate for denial of procedural and substantive due process because the inmate had no constitutionally protected liberty interest in a work release program, and revocation of his work release status did not impose an atypical and significant hardship upon him in relation to the ordinary incidents of prison life); *see also Bulger v. United States Bureau of Prisons*, 65 F.3d 48, 49-50 (5th Cir. 1995) (holding inmate's termination from his UNICOR job and reassignment to a non-UNICOR job did not impose an atypical and significant hardship on him in relation to the ordinary incidents of prison life).

Accordingly, to the extent Plaintiff is attempting to allege a due process claim arising from the loss of his lead porter job, this claim must be dismissed. Plaintiff's Complaint, therefore, fails to allege any due process claim upon which relief may be granted.

## C. Equal Protection

Plaintiff also alleges Defendants violated his equal protection rights by depriving him of privileges available to general population inmates for the purpose of punishment without adhering to proper disciplinary procedures. Liberally construed, Plaintiff further asserts that the MHU Multi-Disciplinary Team violated equal protection by failing to consistently discipline or place restrictions on the other inmate involved in the same alleged misconduct. Specifically, Plaintiff alleges the other inmate with whom Plaintiff allegedly passed and received unauthorized canteen items was not punished like Plaintiff. (Filing 1 at CM/ECF p. 8, ¶ 31.)

The Fourteenth Amendment provides that "[n]o State shall . . . deny to any person within its jurisdiction the equal protection of the laws." U.S. Const. amend. XIV, § 1. The government is required to treat similarly situated people alike, *City of Cleburne v. Cleburne Living Ctr., Inc.*, 473 U.S. 432, 439 (1985), and this requirement extends to prison inmates. *Turner v. Safley*, 482 U.S. 78, 84 (1987).

To prevail on an equal protection claim, an inmate plaintiff must allege that he was treated differently than a similarly situated class of inmates, that the different treatment burdened one of his fundamental rights, and that the different treatment bears no rational relation to any legitimate penal interest. *Murphy v. Missouri Dep't of Corr.*, 372 F.3d 979, 984 (8th Cir. 2004).[2] Taking the allegations of Plaintiff's

---

[2] To the extent Plaintiff's allegations could be construed as asserting that mentally ill inmates are a suspect class, such assertion fails. *See More v. Farrier*, 984 F.2d 269, 271 (8th Cir. 1993) (physically disabled inmates not a suspect class (citing *City of Cleburne*, 473 U.S. at 441-43)).

7

Complaint as true, Plaintiff has failed to allege that his equal protection rights were violated. Plaintiff does not allege that he was similarly situated to general population inmates, and the fact that inmates in the MHU sign and acknowledge the terms of the MHU program prior to admittance undermines any inference that MHU and general population inmates are similarly situated. *See Muick v. Reno*, 83 F. App'x 851, 853 (8th Cir. 2003) (per curiam) (federal prisoner's placement in a special housing unit and denial of the same privileges as general-population inmates did not support federal prisoner's equal-protection *Bivens* claims, where prisoner was not similarly situated to the general-population inmates and thus could not show he was treated differently from similarly situated class of inmates). Nor does Plaintiff allege that he was similarly situated to the inmate who was also allegedly engaging in the same misconduct as Plaintiff; that is, the other inmate is not alleged to be an inmate within the MHU. Even if it could be reasonably inferred that the other inmate is similarly situated to Plaintiff, Plaintiff has not alleged that the different treatment burdened one of his fundamental rights.

Accordingly, Plaintiff's Complaint fails to allege any equal protection claim upon which relief may be granted.

**D. 42 U.S.C. § 1985**

Citing 42 U.S.C. § 1985, Plaintiff alleges that Defendants conspired to deprive him of his civil rights. (Filing 1 at CM/ECF pp. 12-13, ¶¶ 42-43.) However, 42 U.S.C. § 1985(1) and (2) (interference with performance of official duty; obstruction of justice and intimidation of party, witness, or juror) have no application to Plaintiff, and Plaintiff fails to state a claim under 42 U.S.C. § 1985(3). As the Eighth Circuit Court of Appeals has explained:

> In order to prove the existence of a civil rights conspiracy under § 1985(3), the [plaintiff] must prove: (1) that the defendants did "conspire," (2) "for the purpose of depriving, either directly or indirectly, any person or class of persons of equal protection of the laws, or equal privileges and immunities under the laws," (3) that one

> or more of the conspirators did, or caused to be done, "any act in furtherance of the object of the conspiracy," and (4) that another person was "injured in his person or property or deprived of having and exercising any right or privilege of a citizen of the United States." 42 U.S.C. § 1985(3). . . . "The 'purpose' element of the conspiracy requires that the plaintiff prove a class-based 'invidiously discriminatory animus.'"

*Larson ex rel. Larson v. Miller*, 76 F.3d 1446, 1454 (8th Cir. 1996) (en banc) (quoting *City of Omaha Emps. Betterment Ass'n v. City of Omaha*, 883 F.2d 650, 652 (8th Cir. 1989)). In addition, Plaintiff "must allege that an independent federal right has been infringed. Section 1985 is a statute which provides a remedy, but it grants no substantive stand-alone rights. The source of the right or laws violated must be found elsewhere." *Federer v. Gephardt*, 363 F.3d 754, 758 (8th Cir. 2004).

Although Plaintiff has alleged a class-based discriminatory animus based on mental illness, Plaintiff's conspiracy claim fails for two reasons. First, as discussed above, the independent federal rights Plaintiff claims were infringed were his rights to due process and equal protection under the Fourteenth Amendment. However, Plaintiff has not stated a claim upon which relief may be granted under either of those constitutional provisions. Accordingly, Plaintiff's § 1985(3) claim cannot proceed pursuant to an alleged violation of Plaintiff's rights under the Fourteenth Amendment. Second, Plaintiff's conclusory allegations that a conspiracy existed between Defendants are insufficient to state a claim for relief. *See Kelly v. City of Omaha*, 813 F.3d 1070, 1077-78 (8th Cir. 2016) ("In order to state a claim for conspiracy under § 1985, a plaintiff must allege with particularity and specifically demonstrate with material facts that the defendants reached an agreement. This standard requires that allegations of a conspiracy [be] pleaded with sufficient specificity and factual support to suggest a meeting of the minds directed toward an unconstitutional action." (internal quotation marks and citations omitted)); *Cooper v. Delo*, 997 F.2d 376, 377 (8th Cir. 1993) (per curium) (complaint subject to dismissal if allegations of conspiracy are inadequate; plaintiff must allege facts suggesting mutual understanding between defendants or meeting of minds).

Accordingly, Plaintiff has not alleged any claims on which relief may be granted pursuant to 42 U.S.C. § 1985(3), and such claims will be dismissed.

## IV. CONCLUSION

Plaintiff's Complaint fails to state a plausible claim for relief against the Defendants under the Fourteenth Amendment. Plaintiff has also failed to state a claim under 42 U.S.C. § 1985. Accordingly, the court will dismiss Plaintiff's Complaint for failure to state a claim upon which relief may be granted without leave to amend as the court concludes that further amendment would be futile.

IT IS THEREFORE ORDERED that:

1. This matter is dismissed for failure to state a claim upon which relief may be granted.

2. Plaintiff's pending motion for service ([Filing 2](Filing 2)) is denied as moot.

3. The court will enter judgment by a separate document.

Dated this 3rd day of September, 2021.

BY THE COURT:

*Richard G. Kopf*
Richard G. Kopf
Senior United States District Judge